**2024 IL 130693**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 130693)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
CHRISTIAN P. MIKOLAITIS, Appellant.

*Opinion filed November 21, 2024.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, Rochford,
and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Christian P. Mikolaitis, appealed the circuit court of Will County's
order denying him pretrial release pursuant to section 110-6.1 of the Code of
Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended
by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness
Act (Act). See also Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various

provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023). Defendant argued the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate any safety threat he posed. The appellate court affirmed the circuit court's order granting the State's verified petition to deny pretrial release. 2024 IL App (3d) 230791, ¶ 13. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3         On December 12, 2023, defendant was charged with attempt (first degree murder) (Class X) (720 ILCS 5/8-4(a), 9-1(a)(2) (West 2022)) and aggravated battery (*id.* § 12-3.05(f)(1), (h)). The State subsequently filed a verified petition to deny pretrial release, alleging defendant was charged with a forcible felony and that his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2022)).

¶ 4         In the petition, the State provided a factual basis in support of pretrial detention as follows:

         "On December 10[ ], 2023, at approximately 8:30 p.m., Lockport Police Officer's [*sic*] responded to Challenge Fitness for a victim, Alec Geibel, who had been stabbed multiple times. Alec was located at Challenge Fitness in Lockport, taken by the paramedics to Silver Cross Hospital, and subsequently transported to a [h]ospital in Chicago as a trauma 1 transport. Alec was heavily medicated but gave a brief statement while at Silver Cross Hospital. Alec stated that [defendant] had stabbed him and was driving a gray Hyundai Elantra with red trim. At 10:49 p.m., Charlene Mikolaitis called 911 and stated her son [defendant] told her he had stabbed Alec while in Lockport. Charlene also stated he would be driving a gray Hyundai Elantra. At 12:39 a.m., Kaitlyn Dunagan, [defendant's] girlfriend, called 911 and stated that she had just met [defendant] at a gas station. [Defendant] stated he had just stabbed someone and told her exactly how he did it. Kaitlyn further stated that he picked up Alec, who was going to buy Percocet from him. [Defendant] parked the car and pretended to look for his cell phone in the back seat. [Defendant] then opened the passenger door and stabbed Alec multiple times. Alec left the vehicle bleeding and

[defendant] drove away. [Defendant] also stated he hated the kid. At 1:31 a.m.[,] [defendant] was arrested (west bound I-80) by State Troopers and Grundy County Deputies. [Defendant] was in the gray Hyundai Elantra and the front passenger seat had knife punctures."

¶ 5     Pretrial services completed a pretrial risk assessment, but it contained limited information because defendant declined to participate in the assessment. Defendant's criminal history information indicated that he had a pending case for failure to notify of a damaged or unattended vehicle.

¶ 6     On December 18, 2023, the circuit court held a pretrial detention hearing on the State's verified petition to deny pretrial release. At the hearing, the court stated that it reviewed the State's pleading along with the proffer and then asked the State if it wished to argue anything else. The State presented argument for detention, stating:

> "Your Honor, I would first like to point out the nature and circumstances of the offense charged. Your Honor, this is a violent offense and the defendant's actions as alleged were violent in nature. Your Honor, I would point to the identity of a person or persons whose safety the defendant is believed to pose a threat and the nature of that threat. Your Honor, I would point to the alleged victim in this matter, Mr. Alec Geibel. Your Honor, this defendant did stab allegedly this individual multiple times and left that individual in that state. Your Honor, if this defendant were to be released, I would pose that individual's safety is at risk.

> Your Honor, I point to any statements made by the defendant and the circumstances surrounding them. Your Honor, this defendant did allegedly tell other people what happened. He said that he had just stabbed someone and told individuals exactly how he did it. Your Honor, I would point to the defendant having—or having access or possessing weapons. Your Honor, while this defendant didn't necessarily have a gun, he had a knife and he used that knife to stab this individual multiple times.

> Your Honor, I would ask that you take into account everything put forth in our petition. I would ask that you take into account the argument made today, and I ask that you grant the State's petition to deny pretrial release."

¶ 7    Following the State's argument, defense counsel asked for defendant to be released from custody and placed on electronic monitoring, noting that defendant was 19 years old; had no criminal history; and had been "previously diagnosed with depression, anxiety[,] and bipolar disorder for which he takes antipsychotics—for which he has been prescribed antipsychotics." The court asked whether defendant was currently taking his antipsychotic medicine, to which defendant said no. Defense counsel indicated the last time defendant took his medication was in September when he "had an admission for mental health."

¶ 8    After reviewing the State's proffer and the parties' arguments, the circuit court found the proof was evident that defendant committed a detainable offense, he posed a real and present threat to the safety of Geibel, and no release conditions could mitigate the real and present safety threat defendant posed. When addressing that there were no conditions that could mitigate the safety threat defendant posed, the court stated,

> "I understand the concept of mental illness, but it does not appear as if the defendant was taking his medicine which was previously prescribed to him in order to combat his antipsychotic behavior along with his bipolar, so that is a greater concern to me and it certainly poses a question as to whether or not he would be in a position where he could abide by the conditions of pretrial release. As such, I will find that the defendant here does meet the dangerousness standard and he shall remain detained."

The court subsequently entered a written detention order.

¶ 9    Defendant appealed the circuit court's order granting the State's verified petition to deny pretrial release, arguing the State failed to show by clear and convincing evidence that no condition or combination of conditions could mitigate any threat he posed. 2024 IL App (3d) 230791, ¶ 9.

¶ 10    The appellate court affirmed the circuit court's order granting the State's verified petition to deny pretrial release. *Id.* ¶ 15. The court found the State provided argument and evidence regarding the factors set forth in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)) and that those factors provided the evidentiary corollary to the potential conditions of release. 2024 IL App (3d) 230791, ¶¶ 12-13. The court stated, "[i]t is unclear what evidence the dissent would require the

State to present to meet its burden as to the conditions of release." *Id.* ¶ 12. The court further determined, because defense counsel indicated that defendant was not taking his prescribed medication for his mental health issues, the circuit court "did not err in finding that the defendant's failure to abide by his doctor's directives indicated that he would not follow the conditions placed on him by the court." *Id.* ¶ 13.

¶ 11    Justice Brennan specially concurred, writing separately to express his disagreement with the dissent's suggestion that the Code obligates the State to argue and prove why each condition or combination of conditions set forth in section 110-10(b) of the Code (725 ILCS 5/110-10(b) (West 2022)) cannot mitigate the threat a defendant poses to a particular victim. 2024 IL App (3d) 230791, ¶ 18 (Brennan, J., specially concurring). The special concurrence stated that, while section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) requires the State to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the threat posed by a defendant, the State's burden can be satisfied

> "in a variety of ways: from the presentation of evidence, to be sure, but also by common sense consideration of the factors listed in section 110-5(a)(1)-(7), including the nature of the offense, the strength of the case, the defendant's mental condition, the defendant's criminal history, the defendant's compliance with mandatory supervised release (MSR) or probation, and several others." 2024 IL App (3d) 230791, ¶ 20.

The special concurrence further provided,

> "[t]he State's burden does not obligate it to specifically address the efficacy of every conceivable condition or combination of conditions. Rather, it is the trial court that must ultimately consider all it has heard and, if ordering detention, make written findings explaining 'why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community.' " *Id.* (quoting 725 ILCS 5/110-6.1(h) (West 2022)).

¶ 12    Presiding Justice McDade dissented, finding

"[t]he distinction between sections 110-5 and 110-10 [of the Code] is important because the State's explicit burden under section 110-6.1(e)(3) of the Code is that it must establish by clear and convincing evidence, in relevant part, that 'no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate' either the safety risk the defendant poses or the risk of his or her 'willful flight,' depending on the basis for the State's detention request." *Id.* ¶ 27 (McDade, J., dissenting) (quoting 725 ILCS 5/110-6.1(e)(3) (West 2022)).

Specifically, the dissent asserted that "[s]ection 110-5 provides guidance for the *court* when considering whether conditions exist that would, in part, 'reasonably ensure the appearance of a defendant as required or the safety of any other person or the community.' " (Emphasis in original.) *Id.* ¶ 25 (quoting 725 ILCS 5/110-5(a) (West 2022)). "In contrast to section 110-5, section 110-10 addresses the actual *conditions* that can be imposed on pretrial release." (Emphasis in original.) *Id.* ¶ 26 (citing 725 ILCS 5/110-10 (West 2022)). Thus, the dissent determined the "plain language of section 110-6.1(e)(3) makes it clear that the State *cannot* meet its burden under section 110-6.1(e)(3) by merely presenting evidence relevant to the factors the court is required to consider under section 110-5 when reaching its ultimate pretrial release decision." (Emphasis in original.) *Id.* ¶ 27.

¶ 13 Ultimately, the dissent would reverse the circuit court's decision and order defendant's release. *Id.* ¶ 29. Specifically, the dissent concluded,

"the State presented no evidence regarding any condition or combination of conditions that could mitigate the safety threat posed by Mikolaitis. Even though it may have presented evidence relevant to the factors the court is required to consider under section 110-5, the State could *not* meet its burden under section 110-6.1(e)(3) by presenting nothing more than that evidence. Because the State failed to present any evidence related to its burden under section 110-6.1(e)(3), it has failed to meet its burden and has essentially conceded that there *are* adequate conditions." (Emphases in original). *Id.*

¶ 14 This court granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 15                                II. ANALYSIS

¶ 16        Under the amended Code, every person charged with an offense is presumed
eligible for pretrial release. 725 ILCS 5/110-2(a), 6.1(e) (West 2022). The State
must file a verified petition requesting the denial of pretrial release, and the circuit
court shall hold a hearing on the petition. *Id.* § 110-6.1(a). When seeking denial of
pretrial release, the State bears the burden of proving by clear and convincing
evidence that (1) the proof is evident or presumption great that the defendant
committed a detainable offense; (2) the defendant poses a real and present threat to
the safety of any person, persons, or the community, based on the specific,
articulable facts of the case; and (3)

> "no condition or combination of conditions set forth in subsection (b) of Section
> 110-10 of this Article can mitigate (i) the real and present threat to the safety of
> any person or persons or the community, based on the specific articulable facts
> of the case, for offenses listed in paragraphs (1) through (7) of subsection (a),
> or (ii) the defendant's willful flight for offenses listed in paragraph (8) of
> subsection (a)." *Id.* § 110-6.1(e)(1)-(3).

Section 110-10(b) provides a list of pretrial conditions that may be imposed. *Id.*
§ 110-10(b).

¶ 17        Defendant appeals arguing the State failed to meet its burden as to the third
element contained in section 110-6.1(e)(1)-(3) of the Code. Specifically, defendant
maintains that the State offered no evidence and made no argument regarding
possible conditions of release that could mitigate any risk posed by his release.
Thus, the issue before this court is whether the State met its burden to prove, by
clear and convincing evidence, that no condition or combination of conditions
could mitigate any threat defendant posed.

¶ 18        In this instance, defendant posits the State cannot meet its burden to prove by
clear and convincing evidence that no condition or combination of conditions can
mitigate any threat he poses, when the State fails to present any argument and any
evidence regarding conditions of release contained within section 110-10(b). See
*id.* § 110-10(b). Defendant argues the State must at least address relevant and
potential conditions based on the individualized facts of the case. Defendant also
contends that, although it was not his burden, defense counsel argued defendant

should be released from custody and placed on electronic monitoring, based on his lack of criminal history and his mental health issues for which he was prescribed antipsychotics. Defendant maintains that the circuit court improperly relied on information from defense counsel about defendant's mental health issues to conclude defendant would not "abide by the conditions of pretrial release."

¶ 19    In response, the State argues (1) the circuit court properly found that no conditions could mitigate the safety threat posed by defendant and (2) section 110-6.1(e)(3) of the Code requires only that the State present clear and convincing evidence that establishes that no conditions can mitigate the safety threat and does not, as defendant suggests, require any argument.

¶ 20    We hold that, while section 110-6.1(e)(3) of the Code places the burden of proof on the State, the State's burden of proof does not require it to specifically address every conceivable condition or combination of conditions and argue why each condition does not apply. Absent from the statutory language outlining what the State must prove in order to detain defendant is any language requiring argument as to specific matters or language dictating what evidence or argument the State must present in attempting to meet its burden. *Id.* § 110-6.1(e)(1)-(3). Rather, the State must meet its burden and present sufficient evidence regarding the specific scenario presented by each case, such as the nature and circumstance of the offense, the defendant's criminal history, the defendant's risk assessment score, and other considerations known to the State at the time of the hearing (see *id.* §§ 110-6.1(f)(7), 110-10(b)), that allows the circuit court to determine whether pretrial release is appropriate.

¶ 21    To the extent defendant argues that the State cannot meet its burden by offering evidence and argument based on the statutory factors in section 110-5 of the Code, we disagree. Section 110-6.1(e)(3) of the Code does not preclude the State from presenting evidence as to the statutory factors in section 110-5 to clearly and convincingly establish that no conditions can mitigate the safety threat posed by a defendant's release. See *id.* § 110-6.1(e)(3). It comports with logic that the State will present evidence as to the statutory factors in section 110-5 of the Code because those factors guide the circuit court in its consideration of whether conditions exist that would in part reasonably ensure the appearance of a defendant as required or the safety of any other person or the community. See *id.* § 110-5.

¶ 22    Moreover, there is no language prohibiting the circuit court from considering evidence that may come from a source other than the State. In fact, section 110-6.1(f)(2) of the Code specifically states that "[t]he State or defendant may present evidence at the hearing by way of proffer based upon reliable information." *Id.* § 110-6.1(f)(2). Thus, it only makes sense that the court would consider all evidence before it that is relevant and helpful in determining whether the State has met its burden.

¶ 23    Here, the record shows that at the pretrial detention hearing the State presented evidence regarding the statutory factors to be considered in determining which conditions of pretrial release, if any, will reasonably ensure the appearance of the defendant, the safety of any other person, the safety of the community, and compliance by the defendant. See *id.* § 110-5. That evidence included the nature and circumstances of the offense, the weight of the evidence, and the seriousness of the threat posed by defendant's potential release. Specifically, the State argued that defendant should be detained because (1) defendant committed a violent offense, (2) the victim was a specific person to whom defendant posed a safety threat if released, (3) defendant told others how the offense occurred, and (4) defendant had access to and possessed a weapon, being a knife. Based on the evidence known to the State at the time of the pretrial detention hearing, the State proved by clear and convincing evidence that no condition or combination of conditions of release could mitigate the safety threat defendant's pretrial release posed to Geibel. Defendant fails to explain how the State was expected to address mitigating conditions on the undisclosed issue of his mental health.

¶ 24    Ultimately, it is up to the circuit court to review the evidence presented and determine whether conditions of release would mitigate the safety threat posed by a defendant. See *id.* §§ 110-5, 110-6.1(g). Here, the circuit court heard all the evidence and determined that, because defendant failed to comply with his doctor's directives to take his prescribed medication, he would not comply with conditions of release. Accordingly, we find the circuit court did not err in granting the State's petition to deny pretrial release.

¶ 25                                III. CONCLUSION

¶ 26            For the foregoing reasons, we affirm the judgment of the appellate court, which affirmed the judgment of the circuit court granting the State's verified petition to deny pretrial release.

¶ 27            Judgments affirmed.