**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 250439-U

Order filed December 17, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-25-0439 Circuit No. 23-CF-812 |
| FRANCISCO C. ALVAREZ, | ) ) ) | Honorable Arkadiusz Z. Smigielski, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Justice Davenport dissented.

_____

**ORDER**

¶ 1     *Held*:   The circuit court did not err in denying pretrial release. Affirmed.

¶ 2     Defendant, Francisco C. Alvarez, appeals from the circuit court's order denying him

pretrial release. For the following reasons, we affirm.[1]

_____

[1] This decision is filed beyond the deadline set forth in Illinois Supreme Court Rule 604(h)(8) (eff. Apr. 15, 2024) for good cause shown.

¶ 3                                    I. BACKGROUND

¶ 4            On May 2, 2023, the State charged defendant with attempted first degree murder (720

ILCS 5/8-4(a), 9-1(a)(1) (West 2022)) and aggravated battery (*id.* § 12-3.05(d)(4)(i)). Defendant

was later indicted on these charges along with two additional counts of aggravated battery (*id.*

§ 12-3.05(a)(1), (f)(1)). The circuit court set defendant's bond at $500,000, and, if defendant

posted bond, the court's order provided defendant was required to obtain a mental health

evaluation. Defendant remained in custody. On May 23, 2024, defendant filed a motion to

review detention. In response, the State filed a petition to deny defendant pretrial release,

alleging defendant was charged with a detainable offense and his release posed a real and present

threat to the safety of any person, persons, or the community pursuant to section 110-6.1(a) of

the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(6)(W), (7) (West 2024)).

¶ 5            On May 31, 2024, the circuit court held a hearing on the petition. The State proceeded by

way of proffer and provided the following factual bases. On April 29, 2023, at approximately

3:59 a.m., officers with the Joliet Police Department were dispatched to make contact with a

guest at a residence, later identified as defendant, who had been staying there for approximately

one and a half weeks. Defendant stated he called the police because he thought someone was

outside the home. Officers asked defendant if he required medical attention, and defendant

refused medical treatment. Officers left the residence. Shortly thereafter, the owner of the

residence, who was defendant's employer, heard a commotion and determined defendant was in

the front hall closet and would not leave. Defendant believed someone was following him and

out to get him. Officers were called back to the residence. Officer Yuliana Lopez, while in her

police uniform, communicated with defendant in Spanish to get him to leave the closet.

Defendant refused. Other officers arrived and an ambulance was called to transport defendant to

the hospital for a possible mental health evaluation. Officers then prepared to remove defendant from the closet. Officers Lopez and Lesly Sigala opened the closet door, and defendant exited with a knife and stabbed Officer Lopez in her police vest and lower abdomen. Officers moved defendant to the floor, but he continued to struggle. Officer Sigala deployed her taser to no avail. Defendant was eventually placed in handcuffs and taken to the hospital. Defendant received medical treatment for an injury he sustained by grabbing the knife by the blade. The knife recovered from the scene was 13.5 inches long. A search of defendant's room revealed cannabis and a white powdery substance that field tested positive for cocaine.

¶ 6        The police interviewed defendant while he was at the hospital. Defendant stated he went on a website called Alligator looking for sexual intercourse. Defendant called a phone number for the website and spoke to someone but ultimately disconnected the call. Defendant said someone called him back and threatened him. Defendant believed someone was coming to kill him and the officers who arrived at the residence were individuals from the website impersonating police officers. He acknowledged the officers identified themselves as police officers and stated they were trying to help him. However, defendant said he "wanted to take one of the officers out" because he thought they were trying to hurt or kill him. Defendant admitted to stabbing Officer Lopez and using cocaine that night. Defendant stated his use of cocaine increased his fears of the situation.

¶ 7        The State argued that, based on the nature and seriousness of the offense, the court should deny defendant pretrial release. Defendant declined to participate in a pretrial risk assessment, but his criminal history included disorderly conduct and driving while under the influence of alcohol for which he successfully completed sentences of probation and court supervision, respectively. Defense counsel argued defendant was not a threat because he was delusional

3

during the incident and he had no history of violence. Defense counsel noted defendant was married and had four children, two of whom had mental disabilities and he was the sole caretaker. Defendant had two jobs and had lived in the United States for 23 years. Defendant stated that he could live with his wife or brother.

¶ 8 The circuit court found by clear and convincing evidence that the presumption was great defendant committed a detainable offense. The court noted defendant was under the influence of cocaine and stabbed an officer. The court also found defendant posed a real and present threat to the safety of the community due to the nature and circumstances of the offense. Finally, the court found no conditions could mitigate this risk. The court observed that there was no explanation as to why defendant was residing with his employer when this incident occurred and there was a lack of certainty as to where defendant would reside if he was released.

¶ 9 On August 26, 2025, defendant filed a motion for relief and argued the State failed to prove each proposition to support his detention. Defendant contended that medical records supported that this incident was an isolated mental health episode, which could have been caused by a medical condition or drug use, but he did not have a major mental illness. Following a hearing, the circuit court denied the motion. Defendant appeals.

¶ 10                                                    II. ANALYSIS

¶ 11 On appeal, defendant argues the State failed to prove that he posed a real and present threat and no conditions could mitigate that threat. Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence that: (1) the proof is evident or presumption great that the defendant committed a detainable offense,

4

(2) the defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court can consider. *Id.* §§ 110-6.1(g), 110-5; *People v. Mikolaitis*, 2024 IL 130693, ¶¶ 20-21. Where no live witness testimony was presented at the hearing, such as here, we review the court's decision *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 12        Where a defendant's danger is proven by clear and convincing evidence, the Code does, of course, likewise require the State to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the threat. 725 ILCS 5/110-6.1(e)(3) (West 2024). This burden, however, can be satisfied in a variety of ways: from the presentation of evidence to be sure, but also by common sense consideration of the factors listed in section 110-5(a)(1)-(7), including, *inter alia*, the nature of the offense, the strength of the case, *the defendant's mental condition*, the defendant's criminal history, and the defendant's compliance with mandatory supervised release or probation. See *Mikolaitis,* 2024 IL 130693, ¶ 21 (the State may present "evidence as to the statutory factors in section 110-5 to clearly and convincingly establish that no conditions can mitigate the safety threat posed by a defendant's release."). The State's burden does not obligate it to specifically address the efficacy of every conceivable condition or combination of conditions. Rather, it is the trial court that must ultimately consider all it has heard and determine whether "less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community ***." 725 ILCS 5/110-6.1(h)(1) (West 2024).

¶ 13    The proffered evidence at the detention hearing established that defendant first summoned the police to where he was staying because he believed someone threatening was outside the home. The responding officers apparently determined that this was not the case and asked defendant if he required medical assistance, which he declined. The owner of the residence again summoned the police a short time later, indicating defendant was hiding in the front hall closet in fear that someone was out to get him and would not leave. The responding officers called for an ambulance to transport defendant to the hospital for a mental health evaluation and then attempted to coax defendant out of the closet. When the officers opened the closet door, defendant stabbed Officer Lopez three times—once in her vest, once in her abdomen below the vest, and once in her buttocks. The knife defendant used had a 13.5" blade. When interviewed at the hospital, defendant related that he believed someone was coming to kill him. He acknowledged that the officers identified themselves as police officers and stated they were trying to help him but stated that he "wanted to take one of the officers out" because he thought they were trying to hurt or kill him. Defendant admitted that the cocaine he used that night increased his fears. A search of defendant's room revealed cannabis and a white powdery substance that field tested positive for cocaine.

¶ 14    Defendant refused to cooperate with his pretrial risk assessment prior to his detention hearing. Without more information, his mental health issues, combined with his use of illicit substances, certainly support concluding that defendant is a danger to the community that cannot be mitigated short of detention. See *People v. Evans*, 186 Ill. 2d 83, 102 (1999) (while it may be mitigating, mental illness can also be an aggravating factor at sentencing where it suggests a defendant's continued dangerousness).

¶ 15    III. CONCLUSION

6

¶ 16     For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 17     Affirmed.

¶ 18     JUSTICE DAVENPORT, dissenting:

¶ 19     With respect, I dissent. The State failed to overcome the statutory presumption in favor of release, because its evidence fell short of clearly and convincingly establishing that no condition or combination of conditions could mitigate any real and present threat that would be posed by defendant's release. For this reason, I would reverse the circuit court's judgment and remand for the court to hold a hearing on the appropriate conditions of pretrial release.

¶ 20     Under the statutory scheme, it is presumed all criminal defendants are entitled to pretrial release, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2024). To overcome this presumption, the State must establish, by clear and convincing evidence, *inter alia*, that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3). Although the State need not present evidence or argument on every condition or conceivable condition of release (*People v. Mikolaitis*, 2024 IL 130693, ¶ 21), it must present clear and convincing evidence from which the court may find no condition or combination of conditions would mitigate the safety threat posed by the defendant. See *id.* ¶ 24; 725 ILCS 5/110-6.1(e)(3) (West 2024). Clear and convincing evidence has been described as the "quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *People v. Watkins-Romaine*, 2025 IL App (1st) 232479-B, ¶ 23. It is something more than a preponderance, but less than what is required to convict a person of a criminal offense. *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. The statute provides the court with a

7

nonexhaustive list of factors it may consider when reviewing the evidence presented. 725 ILCS 5/110-5(a) (West 2024). Per the statute, "[d]ecisions regarding release, conditions of release, and detention must be individualized, and no single factor may be used exclusively to order detention." *Id.* § 110-6.1(f)(7). When the parties to a detention hearing proceed by proffer, the circuit court's detention decision is reviewed *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51.

¶ 21　　　　Evaluating the evidence anew, I would find the State failed to overcome the presumption in favor of release. Here, the parties' proffers show, at the time of the offense, defendant had been in the United States for approximately 23 years, was employed as a chef at two restaurants, was temporarily living with his boss, and had four children for whom he provided. See 725 ILCS 5/110-5(a)(3)(A) (West 2024) (permitting the court to consider the length of residence in the community, employment, and community ties). Further, defendant has a minimal criminal history, consisting of two nonviolent, misdemeanor offenses—a 2002 DUI conviction and a 2008 disorderly conduct conviction. See *id.* (permitting the court to consider a defendant's criminal history). Moreover, the record shows defendant successfully completed a term of court supervision for the DUI conviction and a term of probation for the disorderly-conduct conviction. After his 2008 misdemeanor conviction, defendant had no other run-ins with the criminal justice system until 2023, when he was charged with the instant offense. In addition, the State did not proffer any evidence that defendant had any disciplinary issues over the one-year period he was in custody before the State filed its petition to detain. Defendant's nonviolent and limited criminal record, marked by a 15-year gap before the instant offense, along with his successful completion of probation and court supervision and his lack of disciplinary issues while in custody, strongly suggests defendant is likely to comply with any conditions of pretrial release. Against this record, the State has not carried its burden to establish, by clear and

convincing evidence, that no condition or combination of conditions could mitigate the threat of harm posed by defendant's release.

¶ 22    Finally, while I do not disagree that the offense here was serious, the evidence tended to show that defendant committed the offense during an isolated mental-health episode that may have been exacerbated by drug use. This single factor alone, however, does not meet the clear and convincing standard required to justify defendant's detention. See 725 ILCS 5/110-6.1(f)(7) (West 2024) ("[N]o single factor may be used exclusively to order detention."). The State presented no evidence of an ongoing mental issue, no evidence of a violent propensity, and no evidence of an inability to mitigate a safety threat through conditions of release. Notably, defendant's refusal to participate in a pretrial risk assessment does not bridge the State's evidentiary gap, and at most explains the absence of additional information. See *People v. Willard*, 2023 IL App (5th) 230895-U, ¶¶ 16-22 (holding that a defendant's nonparticipation in a risk assessment may not be treated as an aggravating factor and may only be noted as limiting the information before the court). The statutory framework requires *affirmative* proof that no set of conditions can mitigate the alleged threat posed by defendant's release. That showing was simply not made here.

¶ 23    Accordingly, I dissent from the majority's decision to affirm the court's detention order.