**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 260161-U

Order filed June 18, 2026

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-26-0161 Circuit No. 26-CF-51 |
| JACKSON B. YEAGER, | ) ) ) | Honorable Michelle A. Vescogni & |
| Defendant-Appellant. | ) | H. Chris Ryan, Jr., Judges, Presiding. |

JUSTICE BERTANI delivered the judgment of the court.
Justice Davenport concurred in the judgment.
Justice Anderson dissented.

**ORDER**

¶ 1     *Held*: The State failed to prove by clear and convincing evidence that conditions of pretrial release could not mitigate the threat defendant posed. Reversed and remanded.

¶ 2     Defendant, Jackson B. Yeager, was charged on February 9, 2026, with five counts of child sexual abuse material (Class X) (Pub. Act 104-245, § 50 (eff. Jan. 1, 2026) (amending 720 ILCS 5/11-20.1)) and five counts of unauthorized video recording (Class 3) (720 ILCS 5/26-4(a-5), (a-

20), (d)(4) (West 2024)). The State filed a verified petition to deny pretrial release, alleging defendant was charged with a detainable offense and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(5) (West 2024)). We reverse and remand with directions.

¶ 3                                          I. BACKGROUND

¶ 4        The factual basis from the State's petition provided that on February 2, 2026, officers were dispatched to a residence regarding a hidden camera found in the bathroom. Officers spoke with E.H., who was 17 years old, and her parents, who resided at the residence. E.H. stated that she entered the bathroom to take a shower, noticed a gap between the bathroom mirror and the wall, and located a black camera device. She alerted her parents. The camera had been taped to the back of the bathroom mirror, and the camera lens was directed toward the shower. The camera contained a memory card and was sent for forensic analysis. The camera was motion activated and recorded in short clips. On the memory card, four female siblings all under the age of 18 were observed in different clips from February 2, 2026. Two clips depicted the unclothed breasts of E.H. prior to her discovery of the camera. Three other separate clips depicted the unclothed buttocks of O.H., M.H., and A.H. at different times on February 2. Defendant was married to the adult sister of the minors and was seen on video clips on February 2. In the clips, defendant was bending down and looking at the camera, "as though he [was] confirming the angle the camera [was] viewing." The family noted defendant "spen[t] a great deal of time" in that bathroom.

¶ 5        Defendant was interviewed by officers on February 6, 2026. He stated that he installed the camera at the residence on January 31, 2026. Defendant claimed he installed the camera to have proof if something happened to his daughter from a previous marriage when she visited the

residence. However, defendant also acknowledged that his daughter was always with him and his wife at the residence, never alone. He further stated that his daughter was not in his care from January 31 through February 6, 2026, as she was with her mother. Defendant was aware the minors in the residence used that bathroom. He did not have permission to install the camera, nor did he notify anyone that he was doing so.

¶ 6　　　　Defendant scored 1 out of 14 points on his pretrial risk assessment, indicating he was a Level 1 risk when Level 6 was the highest risk level. This scoring took into account that defendant was unemployed at the time of his arrest. Defendant was 34 years old and did not have a criminal history. He stated that he lived at his house with his wife and three-month-old baby. He also shared custody of his five-year-old daughter. Defendant stated that he had reliable transportation, was unemployed, did not have a source of income, and did not have military service. However, defendant listed his wife as his verification contact, and she stated that he did not have reliable transportation, he served in the army for five years, and she did not know if he was honorably discharged.

¶ 7　　　　A hearing was held on the petition. After providing the factual basis, the State argued that there were no conditions that would mitigate the threat defendant posed to the minors. The State noted that defendant was familiar with the family, had access to the residence, and had breached trust. It argued home confinement was inappropriate and that detention was the only possible way to protect and mitigate the threat he posed. Defense counsel argued that defendant did not have a criminal history, lived "about an hour away" from the alleged victims, and there was "absolutely no reason he needs to go anywhere near that home." Counsel asked that defendant be released with GPS monitoring and that the court enter a no contact order with the victims and a stay away order from the residence. In rebuttal, the State said that defendant did not "have a reason to be going to

3

this home every single day, nor did he have a reason to put a covert camera in the bathroom." The State further indicated that defendant had attempted to call the parents of the victims from jail.

¶ 8  The court granted the State's petition finding the State met its burden by clear and convincing evidence. In doing so, the court noted that it found defendant's explanation for the camera implausible, where his daughter was not in his care during the requisite time frame and never alone at the residence. The court found that placing defendant on GPS monitoring with a stay away order was not enough to mitigate the threat he posed to the minor victims.

¶ 9  Defendant filed a motion for relief, solely arguing that conditions were available to mitigate the threat he posed. The court denied the motion.

¶ 10  II. ANALYSIS

¶ 11  On appeal, defendant argues that the State failed to prove that there were no conditions that could mitigate the threat he posed. As the hearing on the State's petition to deny pretrial release contained no live witness testimony, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 12  The Code establishes the presumption that every person charged with an offense is eligible for pretrial release. 725 ILCS 5/110-2(a), 6.1 (West 2024); *People v. Cousins*, 2025 IL 130866, ¶ 25. To overcome this presumption, the State must file a verified petition requesting the denial of pretrial release (725 ILCS 5/110-6.1(a), (d) (West 2024)), and bears the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question *** ." *Chaudhary v. Department of Human*

4

*Services*, 2023 IL 127712, ¶ 74. The clear and convincing standard rests somewhere between requiring more than a preponderance but less than evidence beyond a reasonable doubt necessary for criminal conviction. *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010). Where the State has not met its burden, detention is unlawful. *Cousins*, 2025 IL 130866, ¶ 25.

¶ 13    A court is guided by a list of nonexhaustive factors it may consider when determining whether appropriate conditions for pretrial release exist. 725 ILCS 5/110-5(a) (West 2024). When granting pretrial release, a court must utilize mandatory and discretionary conditions—or some combination thereof—to impose the least restrictive means necessary "to reasonably ensure *** the safety of any other person or persons or the community." *Id.* §§ 110-5(c), 10.

¶ 14    Weighing the evidence at hand, we conclude the State's proffer failed to satisfy its burden to justify detention. The State argued that defendant should be detained and continued to pose a risk to the minor victims citing (1) his admission to the installation of a covert camera in the bathroom, (2) his familiarity with the family and victims, (3) his access to the residence, (4) his implausible justification, (5) and his attempt to contact one of the minor victims' parents while incarcerated. These considerations peripherally touch on several factors a court may consider, such as the weight of evidence and the nature and seriousness of the threat posed by his release. *Id.* §§ 110-5(a)(2), (4) (West 2024). In our view, the State's proffer disproportionately relied on the severity of the sex offense charged and its circumstances in requesting defendant's detention. *Id.* § 110-5(a)(1). The Code is clear, however, that a single factor cannot dispositively support a detention order; instead, the decision must be individualized to the present case. *Id.* § 110-6.1(f)(7).

¶ 15    The evidence establishes that defendant has no criminal history. *Id.* § 110-5(a)(3). Defendant scored 1 of 14 possible points on his pretrial risk assessment. His lone point was based on his unemployment at the time of his arrest, and he was assessed as a Level 1 risk—predictive

5

of the lowest risk-level for violating pretrial release. During the pretrial detention hearing, defense counsel represented that the defendant resides "about an hour away" from the alleged victims. Defense counsel advocated for the imposition of GPS monitoring, a no contact order with the victims, and a stay away order from their home. In rebuttal, the State did not respond to the efficacy of these proposed conditions for release but reiterated the circumstances leading to his charge. Considering the foregoing, the State has not established, through clear and convincing evidence, that no condition or combination of conditions of pretrial release could mitigate the threat defendant poses. Accordingly, the court's detention order is reversed, and this matter is remanded for a new hearing on the appropriate conditions of pretrial release. *Cousins*, 2025 IL 130866, ¶ 36.

¶ 16     While it is the circuit court's purview to deem the least restrictive conditions necessary to mitigate the threat posed on remand (725 ILCS 5/110-5(c), 10(b) (West 2024)), other courts have upheld or discussed certain discretionary pretrial release conditions imposed upon those charged with sex offenses based on the circumstances: electronic monitoring (*People v. La Parra*, 2026 IL App (1st) 252638-U, ¶ 33), electronic home monitoring (*People v. Lee*, 2024 IL App (2d) 240208-U, ¶¶ 30-32; 725 ILCS 5/110-10(b)(5) (West 2024)), refraining from geographic areas or premises (*Lee*, 2024 IL App (2d) 240208-U, ¶ 30 (schools, recreation centers); 725 ILCS 5/110-10(b)(4) (West 2024)), refraining from approaching or communicating with particular persons (*Lee*, 2024 IL App (2d) 240208-U, ¶ 30; 725 ILCS 5/110-10(b)(3) (West 2024)), no unsupervised contact with minors (*People v. Reamy*, 2024 IL App (2d) 240084-U, ¶ 9) and prohibiting internet access (*id.* ¶ 17). These examples are not intended to be exhaustive of the measures the circuit court might employ in considering the least restrictive conditions for the release of the defendant.

¶ 17                                    III. CONCLUSION

¶ 18    The judgment of the circuit court of La Salle County is reversed and remanded for a hearing on the least restrictive conditions of release.

¶ 19    Reversed and remanded with directions.

¶ 20    JUSTICE ANDERSON, dissenting:

¶ 21    I respectfully dissent from the majority's holding as I would affirm defendant's detention upon finding that the State met its burden of proving that there were no conditions to mitigate the threat defendant posed. As the majority notes, the statute provides factors the court can consider when determining the conditions of release, and the State presented evidence of such factors, including the nature and circumstances of the offense. See 725 ILCS 5/110-5 (West 2024). There appears to be no dispute that the video evidence depicts defendant setting up the camera to covertly record his wife's minor siblings. He also attempted to contact the victims' family while he was in jail, which reflects on his inability to abide by court orders and conditions.

¶ 22    Moreover, though defendant had no criminal history,

> "the evidence of a defendant's charged conduct, even if it took place on a single occasion, may reflect such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders— or even societal norms regarding the safety of others—if the defendant is placed on pretrial release. The presumption in favor of pretrial release *** does not obligate a trial court to release such a defendant in the hopes that his otherwise spotless record will negate the real and present threat he poses to the safety of the community as shown by the State's evidence." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 20.

This case falls into such a scenario. Based on the facts presented, no conditions (at least, no conditions that could be enforced in a meaningful way) would mitigate the threat to the victims, and the community as a whole, defendant poses. I would affirm the trial court's decision.